# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

           Plaintiff,

v.

WAYNE H. PETTIS,

           Defendant.

Case No. 14-CR-172-1-JPS

**ORDER**

**1.    BACKGROUND**

On September 8, 2020, Defendant filed a motion for compassionate release. (Docket #68). Subsequently, the Court referred this matter to Federal Defender Services ("FDS") for review. (Docket #69). FDS, on Defendant's behalf, filed a brief in support of Defendant's compassionate release motion. (Docket #75). The Government filed a response opposing Defendant's motion. (Docket #79). Thereafter, FDS filed a reply. (Docket #84). Having reviewed both parties' submissions, the Court grants Defendant's motion. The Court will also grant the parties' motions to seal certain documents. (Docket #76, #80).

**2.    FACTS**

    **2.1    Defendant's Background**

Defendant is a 49-year-old inmate at Federal Correctional Institution Allenwood ("FCI Allenwood"), a low-security prison in Allenwood, Pennsylvania. (Docket #75 at 1). He suffers from a number of health conditions, including type II diabetes, severe obesity (Defendant has a BMI of 42), high blood pressure, and high cholesterol. (*Id.* at 1, 3); (Docket #81 at 4). Defendant has a history of failing to take the medications prescribed to

him by the Bureau of Prison ("BOP") health services. (Docket #81 at 4). On multiple occasions, his treating physicians have labelled him as "non-compliant" in taking medications to control his various conditions (*Id.* at 8, 12, 21). Defendant explains that "his decision to refuse certain medications was due to unanticipated side effects he could not tolerate," and that he is currently working to manage those side effects. (Docket #84 at 4).

In 2015, after self-surrendering, Defendant pleaded guilty to an indictment charging him with distribution of heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2. (Docket #47). This Court imposed a below-guideline sentence of 94-months' imprisonment, to be followed by three years of supervised release. (*Id.*) Defendant has a projected release date in January 2022, and he will be eligible for home confinement starting in July 2021. (Docket #75 at 1, #86 at 3). He has already completed more than 80% of his sentence. (Docket #75 at 17). During the pendency of the case, Defendant was released on bond, and he continued to use and deny using marijuana. (Docket #79 at 2).

Defendant's criminal history began in his early twenties and has continued into his forties. (Docket #79 at 2–3). He has served multiple sentences in prison for non-violent crimes, although some of his past convictions, including the one for which he is currently incarcerated, involved firearms. (*Id.*) The BOP has flagged him with a high risk of recidivism. (*Id.* at 13). While serving his current sentence, Defendant has participated in educational programming, and he has received only a couple of "minor infractions" for possessing an mp3 player and having too many books at once. (Docket #75 at 18–19).

If granted compassionate release, Defendant plans to return to Milwaukee where members of his family reside (although it appears that

Page 2 of 12
Case 2:14-cr-00172-JPS   Filed 12/22/20   Page 2 of 12   Document 87

his wife will soon be moving away from Wisconsin). (*Id.* at 21). He claims that he has a home to move into with a friend. (*Id.*) He also intends to secure a job as a truck driver, possibly with Ever H. Trucking, LLC, the owner of which has informed Defendant's counsel that "[Defendant] would have a job available upon his release working for him." (*Id.*) He also agrees to be subject to conditioned supervision and home confinement. (*Id.* at 20).

### 2.2 FCI Allenwood

Defendant seeks compassionate release from FCI Allenwood due to COVID-19, which poses significant health risks to persons with Defendant's medical conditions. At the time Defendant filed his motion and the Government responded to it, FCI Allenwood had few (if any) confirmed cases of COVID-19. (Docket #75 at 2, #79 at 3–4). Since then, FCI Allenwood has experienced an increase in COVID-19 cases among both staff and inmates. (Docket #85 at 1). The institution is now in lockdown. (*Id.*) As of December 22, 2020, there are 135 active COVID-19 inmate cases and nine staff cases.[1]

### 3. LEGAL STANDARD

Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction." Until recently, only the BOP could file a motion for reduction of a defendant's sentence. *United States v. Gunn*, No. 20-1959, 2020 WL 6813995, at *1 (7th Cir. Nov. 20, 2020). In 2018, Congress passed the First Step Act, which establishes that a court may "grant compassionate release on a prisoner's own request, provided that the prisoner first allowed the

---

[1]*See* Fed. Bureau of Prisons, COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited December 22, 2020).

Bureau to review the request and make a recommendation (or [the BOP] let 30 days pass in silence)." *Id.* The statute directs courts to consider whether (1) a reduction is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable," (2) "extraordinary and compelling reasons warrant such a reduction," and (3) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

Pursuant to its instructions from Congress, but prior to the passage of the First Step Act, the Sentencing Commission "promulgated a policy statement regarding compassionate release." *United States v. Mays*, No. 1:08-CR-00125-TWP-DML, 2020 WL 7239530, at *2 (S.D. Ind. Dec. 9, 2020) (citing United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13). In addition to the requirements found in § 3582(c)(1)(A), the policy statement instructs courts to determine that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13.

The Application Notes to the policy statement go on to define "extraordinary and compelling reasons" as including certain listed medical conditions (*e.g.*, terminal illnesses), age-related declines in health, family circumstances, and "[o]ther [r]easons . . . [a]s determined by the Director of the Bureau of Prisons" (the "catchall" provision). U.S.S.G. § 1B1.13 cmt. n.1(A)–( D); *Gunn*, 2020 WL 6813995, at *2.

The Sentencing Commission has not revised the policy statement to reflect that prisoners may initiate motions for compassionate release under the First Step Act. *Gunn*, 2020 WL 6813995, at *2. The policy statement opens with, "[u]pon motion of the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13. Based on the foregoing, this circuit recently held that the policy

statement is not applicable to prisoner-initiated motions for compassionate release. *Gunn*, 2020 WL 6813995, at *2. Therefore, a court has discretion when determining what constitutes an "extraordinary and compelling" reason warranting compassionate release. *Id.* ("[T]he trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement."). And a district court may "make the same determinations that would normally be left to the Director of the Bureau of Prisons [under the catchall provision at U.S.S.G. § 1B1.13 cmt. n.1(D)]." *United States v. Brown*, No. 01-CR-196-JPS, 2020 WL 4569289, at *4 (E.D. Wis. Aug. 7, 2020).[2]

While judges reviewing prisoner-initiated motions are not formally constrained by the Sentencing Commission's guidelines, the existing policy statement "provide[s] a working definition of 'extraordinary and compelling reasons' . . . [which] can guide discretion without being conclusive." *Id.* Accordingly, in addition to determining whether the defendant has exhausted his administrative rights to appeal, this Court will evaluate prisoner-initiated motions for compassionate release "with due regard for the guidance provided in § 1B1.13" by deciding:

> (1) whether a defendant has presented an extraordinary and compelling reason warranting a sentence reduction; (2) whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

*Mays*, 2020 WL 7239530, at *3.

---

[2]Though decided prior to *Gunn*, the court in *Brown* accurately predicted that the sentencing guidelines do not prohibit courts from exercising discretion in determining which circumstances constitute "extraordinary and compelling." *Brown*, 2020 WL 4569289, at *4.

## 4. ANALYSIS

### 4.1 Exhaustion

Before a court may grant a motion for compassionate release, the defendant must either "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or at least 30 days must have lapsed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). "Failure to exhaust administrative remedies is an affirmative defense, not a jurisdictional issue that the court must reach even if the litigants elect not to raise it." *Gunn*, 2020 WL 6813995, at *1 (internal citations omitted). In the present case, both parties agree that Defendant exhausted his administrative rights when the warden denied his request on May 4, 2020. (Docket #75 at 5, #79 at 7).

### 4.2 Extraordinary and Compelling Circumstances

"[T]he mere presence of COVID-19 in a particular prison (or in the BOP generally) cannot justify compassionate release." *United States v. Melgarejo*, No. 12-CR-20050-JES-DGB, 2020 WL 2395982, at *3 (C.D. Ill. May 12, 2020), aff'd, No. 20-1802, 2020 WL 7230642 (7th Cir. Dec. 8, 2020). Prisoners must demonstrate circumstances that create a heightened risk for them, such as the inability of the particular institution to control an outbreak combined with certain health conditions that place the prisoner "at significant risk of complications should he contract the virus." *Id.*

According to the Centers for Disease Control and Prevention ("CDC"), those with type II diabetes, severe obesity (i.e., BMIs over 40), or hypertension are or may be at "increased risk of severe illness from the

virus that causes COVID-19." CDC, *People with Certain Medical Conditions*.[3] Further, "[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19." *Id.* Defendant suffers from type II diabetes, severe obesity, hypertension, and high cholesterol. Defendant has demonstrated that he has multiple underlying health conditions that that place him "at significant risk of complications should he contract the virus." *Melgarejo*, 2020 WL 2395982, at *3; *see, e.g.*, *United States v. Moore*, No. CR 19-101 (KM), 2020 WL 4282747, at *3 (D.N.J. July 27, 2020) (finding a defendant's diagnoses of obesity (BMI of 40.8), chronic obstructive pulmonary disease, type II diabetes, and hypertension, in light of COIVD-19, created an "extraordinary and compelling" circumstance). *United States v. Porter*, No. 10-20075, 2020 WL 4590524, at *2 (E.D. Mich. July 14, 2020) ("[Defendant] suffers from obesity, hypertension, high cholesterol, and prediabetes. Such factors are sufficient to warrant release even in younger men.").

Certainly, Defendant's failure to comply with his treatment plans gives the Court pause. Courts sometimes interpret a prisoner's refusal to take charge of his health as an indication that his conditions are not truly "severe or not controlled." *Melgarejo*, 2020 WL 2395982, at *4; *see also United States v. Johnson*, No. 1:08-CR-95-HAB, 2020 WL 4593327, at *3 (N.D. Ind. Aug. 11, 2020) ("The Court struggles to believe that an individual should obtain the extraordinary relief of compassionate release simply because they have failed to take care of themselves."); *United States v. Burkholder*, No. 212CR00240GMNCWH, 2020 WL 3643434, at *2–3 (D. Nev. July 3, 2020)

---

[3]Available at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 22, 2020).

Page 7 of 12
Case 2:14-cr-00172-JPS   Filed 12/22/20   Page 7 of 12   Document 87

("Defendant's refusal of treatment or testing for certain conditions hampers his claim that those same conditions now require compassionate release.").

A defendant's failure to cooperate with medical directives does not necessarily warrant a denial of his motion when his underlying diagnoses "are genuine" and his failure stems from an attempt to avoid negative side effects. *Moore*, 2020 WL 4282747, at *4 (finding a defendant's medical conditions to be "extraordinary and compelling" even where "[i]t is apparent that these conditions . . . do not appear in their severest form, and have been managed reasonably well (and could perhaps be managed better with more cooperation from [the defendant])."); *see also United States v. Anello*, No. 2:12-CR-00131-RAJ, 2020 WL 3971399, at *4 (W.D. Wash. July 14, 2020) ("[the defendant's] medical records confirm he has not always followed the prescribed medication recommendations. However, his medical records confirm exacerbated medical conditions that far exceed [his] indication that he is not taking his medicine on time or periodically.").

Here, Defendant alleges that his failure to take his medications is due to his experiencing adverse side effects. Further, "his medications are now being modified to identify which combination of drugs he can take while managing those side effects." (Docket #84 at 4). In any event, diabetes, hypertension, and obesity render Defendant susceptible to severe complications with COVID-19 even if he were fully complying with his medication regimen.

The Government argues that conditions at FCI Allenwood are controlled and, because there has been a rise in COVID-19 cases in Milwaukee, where Defendant would reside after his release, it is more dangerous for Defendant to be released. (Docket #79 at 11). The Court finds this argument unavailing. The risks and conditions of living in a prison

provide a much more dangerous environment than home confinement in Milwaukee. Since the parties first briefed this matter, conditions at FCI Allenwood have worsened, as more inmates and staff are testing positive for the COVID-19 virus. Thus, with a rising number of cases of COVID-19 at FCI Allenwood, combined with Defendant's multiple underlying health conditions that increase his risk of complications if he contracts the virus, the Court finds that Defendant has presented an extraordinary and compelling reason warranting a sentence reduction.

### 4.3 Danger to Any Other Person or the Community and § 3553(a) Factors

While even the Government admits that Defendant's health conditions may constitute an extraordinary and compelling reason for compassionate release, it correctly notes that the analysis does not end there. A court should also "determine that . . . [t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). The factors listed in § 3142(g) include, among others thing, "the nature and circumstances of the offense charged," "the weight of the evidence against the person," and "the history and characteristics of the person." 18 U.S.C. § 3142(g). Similarly, the Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a). *Id.* § 3582(c)(1)(A). These factors include, "the nature and circumstances of the offense and the history and characteristics of the defendant;" the sentence range established for the offense; and the need for the sentence to (1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment, (2) afford adequate deterrence, (3) protect the public, and (4) provide the defendant with effective training, care, and/or treatment. *Id.* § 3553(a).

Defendant is incarcerated for a non-violent drug offense. Although he has a lengthy criminal history, his offenses were non-violent. (Docket #41 at 9–17). His disciplinary issues in prison have been minor, and he has participated in an extensive list of educational courses. (Docket #86 at 2). Defendant has served over 80% of his sentence, and he will be eligible for home confinement as early as July 28, 2021 and release on January 28, 2022. (*Id.* at 3). A large part of Defendant's family lives in Milwaukee, and he has a home to move into. (Docket #75 at 21). He reportedly has a potential employment opportunity, and he has paid the special assessment against him. (Docket #75 at 21, #86 at 3).

To address its concerns about punishment and deterrence, the Court will impose a term of home detention. Because Defendant has served well over half of his term of imprisonment, and because Defendant will be subject to a term of home detention, the Court is satisfied that the updated sentence imposed will not undermine the factors outlined in § 3553(a)(2). If Defendant is genuinely fearful of his susceptibility to COVID-19 while incarcerated, then he should be deterred from committing future crimes or violating the conditions of his supervised release. The Court cautions Defendant that violating his conditions of supervised release will result in reincarceration. *United States v. Grubbs*, CR16-228 TSZ, 2020 WL 3839619, at *3 (W.D. Wash. July 8, 2020) ("The Court, however, is persuaded that the potentially dire consequences to defendant's health if he violates the conditions of supervised release and is returned to custody will motivate him to be compliant and cooperative.").

After giving much consideration to the § 3553(a) factors, in light of Defendant's poor health, time served, non-violent history, and the fact that he will begin a term of supervised release with home confinement

Page 10 of 12
Case 2:14-cr-00172-JPS   Filed 12/22/20   Page 10 of 12   Document 87

immediately upon his release from prison, the Court finds that early release is appropriate.

## 5. CONCLUSION

Defendant has served over 80% of his sentence and he has serious medical conditions that make him especially vulnerable to COVID-19. The remainder of his imprisonment should not be a threat to his life due to the COVID-19 pandemic. For the reasons stated above, this Court will grant Defendant's motion for compassionate release. The Court will also grant the parties' motions to seal certain records, (Docket #76, #80), as they contain Defendant's medical information.

Accordingly,

**IT IS ORDERED** that Defendant Wayne H. Pettis's motion for compassionate release, (Docket #68), be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Wayne H. Pettis's term of imprisonment be and the same is hereby reduced to "time served";

**IT IS FURTHER ORDERED** that Defendant's conditions of supervised release are modified to include a term of home detention for the first three hundred and sixty-five (365) consecutive days of supervised release;

**IT IS FURTHER ORDERED** that this Order is **STAYED** for up to fourteen (14) days in order to complete any of the following steps, as may become both appropriate and necessary: make appropriate travel arrangements, verify a residence, and establish a release plan. If these items have already been addressed, then Defendant must be released promptly. If more than fourteen days are needed to make appropriate travel arrangements, verify a residence, or establish a release plan, the parties

shall immediately notify the Court and show cause why the deadline should be extended;

**IT IS FURTHER ORDERED** that the Bureau of Prisons take all steps necessary to release Defendant Wayne H. Pettis from incarceration in accordance with this Order and pursuant to the amended judgment, which follows; and

**IT IS FURTHER ORDERED** that the parties' motions to seal certain documents, (Docket #76, #80), be and the same are hereby **GRANTED**.

Dated at Milwaukee, Wisconsin, this 22nd day of December, 2020.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge